Packrall, Appellant, *v.* Quail.

Argued June 5, 1963. Before BELL, C. J., MUS-MANNO, JONES,. COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George B. Stegenga,* for appellants.

*Oliver N. Hormell,* County Solicitor, with him *Paul A. Simmons,* for appellees.

OPINION BY MR. JUSTICE COHEN, July 15, 1963:

This is an action of mandamus to compel the Board of Elections of Washington County to accept the nomination papers of appellants, Mike Packrall and Frank Jones, Jr., as the candidates of the "Good Government Party" for the office of county commissioner.

The undisputed facts are that Packrall filed nomination petitions to have his name placed on the primary ballot of the Democratic Party for the offices of county commissioner and county treasurer. Within the permitted period,[1] he withdrew both of these petitions. Thereafter nomination papers[2] were filed by the Good Government Party nominating Packrall and Jones for the office of county commissioner. The county board of elections refused to accept the nomination papers and the court below affirmed the refusal on the ground that Packrall's prior filing of a nomination petition disqualified him, and that Packrall's ineligibility also invalidated the nomination of Jones. We hold that the court below ruled incorrectly in this matter.

Section 976 of the Pennsylvania Election Code provides that no nomination paper shall be accepted "if the candidate named therein has filed a nomination

---

[1] A nomination petition may be withdrawn any time within seven days after the last day for filing the same. Act of June 3, 1937, P. L. 1333, §914, as amended by the Act of May 21, 1943, P. L. 353, §1, 25 P.S. §2874 (Supp. 1962).

[2] The Election Code distinguishes between political parties and political bodies. Act of June 3, 1937, P. L. 1333, §801, as amended by the Act of July 28, 1941, P. L. 526, §1, 25 P.S. §2831 (Supp. 1962). A political group which receives more than a certain number of votes at the preceding general or municipal election is deemed a political party and permitted to select its candidates by the primary election method. A prospective candidate places his name on the primary ballot by filing a *nomination petition*. Any other political group is deemed a political body and must select its candidates by the more difficult process of filing *nomination papers*. See generally *Brown v. Finnegan*, 8 Pa. D. & C. 2d 780, 783-84, aff'd per curiam, 389 Pa. 609, 133 A. 2d 809 (1957).

petition for any public office for the ensuing primary, or has been nominated for any such office by nomination papers previously filed."[3] In holding that section 976 made Packrall ineligible for nomination, the court below interpreted the prohibition as extending to the mere filing of a prior petition, regardless of the status of that petition at the time the nomination paper is filed. The court stated that otherwise a prospective candidate "could wait and see who his opponents were and if he felt they were too strong politically to successfully contest their nomination in the Primary, he could withdraw and have his name submitted to the voters in the General Election merely by getting sufficient signatures to Nomination Papers."

We conclude that the court below attributed the wrong purpose to section 976. The real purpose of this part of the so-called "party raiding" provisions is to prevent the election ballot from being cluttered by candidates who are seeking to multiply the number of times their name appears on the ballot under various inviting labels. See *Thompson v. Morrison,* 352 Pa. 616, 625, 44 A. 2d 55, 59 (1945) (dissenting opinion by former Chief Justice JONES). The legislative remedy was to limit each person to being a candidate of one political group,[4] a choice which could be made any time before the close of the nomination period. Section 976, therefore, requires only that the person seeking nomination not be the candidate of another political group *at the time the nomination paper is filed.*[5]

---

[3] Act of June 3, 1937, P. L. 1333, §976, as amended by the Act of July 5, 1947, P. L. 1358, §2, 25 P.S. §2936 (Supp. 1962). Section 976 contains a similar restriction with regard to the acceptance of nomination petitions.

[4] The sole exception under section 976 is where a nomination petition is presented for the office of judge of a court of record.

[5] "Nominations by a political body are not forbidden; they are expressly allowed as long as the candidate is not also a *candidate*

At the time of filing the nomination papers, Packrall had withdrawn his nomination petition and hence was *not* a candidate for the Democratic primary. Cf. *In re Lower Allen Township School Directors*, 16 Pa. D. & C. 2d 500, aff'd per curiam sub nom, *Carbone Appeal*, 395 Pa. 581, 150 A. 2d 533 (1959). Accordingly, section 976 did not prevent the acceptance of his nomination paper as the candidate of the Good Government Party.[6]

As for the evil envisaged by the court below, one might question either its significance or its elimination through the device of regulating the filing of nomination petitions. For example, a prospective candidate could still wait until the last day for filing petitions in order to decide whether his opponents "were too strong politically" to contest in the primary election. In any event, however, the question of whether this alleged evil necessitates a further restriction on the nomination process is one for legislative and not judicial determination.[7]

Judgment reversed with direction to accept appellants' nomination papers.

Mr. Justice EAGEN dissents.

---

of a political party or another political body." *Brown v. Finnegan*, 8 Pa. D. & C. 2d 780, 786, aff'd per curiam, 389 Pa. 609, 133 A. 2d 809 (1957). (Emphasis supplied.)

[6] Since we hold that Packrall was eligible for nomination, we need not consider whether Packrall's ineligibility would also invalidate the nomination of Jones.

[7] Appellees also assert that the "Good Government Party" does not represent a political philosophy but is merely a mechanism to further the political ambitions of Packrall. Suffice it to say that the Pennsylvania Election Code does not contemplate a judicial investigation into the political philosophy of political bodies so long as their purpose is not the forceful overthrow of the government.