451 A.2d 427

**In re Nomination Certificate of T. Milton STREET as Republican Candidate for the Office of Representative in Congress from the Second Congressional District.**

**Appeal of William DUNHAM, et al.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1982.

Decided Oct. 20, 1982.

Louis W. Fryman, Fox, Rothschild, et al., Philadelphia, for appellants.

Gregory M. Harvey, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

ROBERTS, Justice.

Appellant T. Milton Street is an independent candidate in this year's general election for the office of Representative in Congress from the Second Congressional District of Pennsylvania, having been nominated by nomination papers filed on May 25, 1982, by the "Milton Street Party," a political body.[1] Subsequent to appellant's nomination, the candidate of the Republican Party who had been nominated in the May 18th primary election withdrew his candidacy. On June 10, 1982, a formal notice of withdrawal was filed with the Secretary of the Commonwealth and a substituted nomination certificate was filed by the Republican Party naming appellant Street as the Republican Party's substitute nomi-

---

1. All political groups are statutorily designated as either a political party or a political body. Section 801 of the Election Code, 25 P.S. § 2831. As was stated in *Packrall v. Quail*, 411 Pa. 555, 556 n. 2, 192 A.2d 704, 705 n. 2 (1963),

   "[a] political group which receives more than a certain number of votes at the preceding general or municipal election is deemed a political party and permitted to select its candidates by the primary election method. A prospective candidate places his name on the primary ballot by filing a *nomination petition.* Any other political group is deemed a political body and must select its candidates by the more difficult process of filing *nomination papers."*
   Emphasis in original.

nee.[2] Appellee William H. Gray, III, who is the incumbent and nominee of the Democratic Party, filed a petition with the Commonwealth Court challenging the validity of the substituted nomination certificate and requesting that the certificate be set aside. After a hearing, the Commonwealth Court (MacPhail, J.) entered an order granting the requested relief.[3] This appeal followed. See 42 Pa.C.S. § 723(a).

## I

Throughout these proceedings appellants[4] have conceded that the Republican Party's substituted nomination certificate, which names appellant Street as the party's nominee notwithstanding his separate nomination for the same office as a candidate of a political body, is in violation of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, § 979, as amended, 25 P.S. § 2939. Section 979, which

2. The substitute nomination was made by a caucus of City Committeemen of the Republican Party of the Second Congressional District convened pursuant to Section 979 of the Election Code, 25 P.S. § 2939. See infra. Rule IX of the Republican Party, which pertains to vacancies, provides in relevant part:

"Rule IX. Vacancies

Article I. Method of Filling Vacancies for Nominations of the Republican Ticket and Making Nominations for Special Elections. Section A: Vacancies existing or happening on the Republican Ticket after the date of a Primary Election ... shall be filled as follows:

2. In the case of members of congress ... the vacancy shall be filled by a caucus of the City Committeemen of the District where the vacancy exists or happens ...."

3. The order of the Commonwealth Court states:

"It is ordered that the petition of William H. Gray, III, to set aside the substituted nomination certificate filed by the duly constituted caucus of the Republican City Committeemen of the Second Congressional District be and the same is granted. The Secretary of the Commonwealth is directed not to certify the name of T. Milton Street as a candidate of the Republican Party for the office of Representative of Congress for the Second Congressional District."

4. In addition to T. Milton Street, appellants include William Dunham and Samuel Rymer, Chairman and Secretary respectively of the caucus of City Committeemen of the Republican Party of the Second Congressional District.

governs the filling of vacancies created by the withdrawal of a party's candidate in a general election, provides in pertinent part:

"Any vacancy happening or existing after the date of the primary in any party nomination, by reason of the death or withdrawal of any candidate after nomination, or by reason of the death before or on the day of the primary election of a candidate for nomination who had received a plurality of votes of his party electors cast for the office for which he sought nomination, may be filled by a substituted nomination made by such committee as is authorized by the rules of the party to make nominations in the event of vacancies on the party ticket: *Provided, however, That no substitute nomination certificate shall nominate any person who has already been nominated by any political party or by any other political body for the same office.*"

Emphasis added.

On this appeal, as in the Commonwealth Court, appellants seek to avoid the prohibition of the governing statute on two constitutional grounds. First, appellants argue that, notwithstanding the admitted constitutionality of the statutory prohibition against a party's substitute nomination of "any person who has already been nominated by any political party . . . for the same office," the Legislature may not constitutionally bar a party's substitute nomination of "any person who has already been nominated . . . by any other *political body* for the same office." According to appellants, "[b]y treating political parties and political bodies identically, the prohibitions of Section 979 are 'over-inclusive' and hence violative of the Equal Protection Clause of the Fourteenth Amendment." Second, appellants argue that application of the challenged provision of the statute to the Republican Party in the Second Congressional District unconstitutionally burdens the First Amendment associational rights of the Republican Party and its members to nominate the candidate of their choice. In appellants' view, because a substantial majority of the voters in the Second Congres-

sional District are enrolled in the Democratic Party, the statutory prohibition has "the impermissible effect of fostering the domination of [the Democratic] party" by "prevent[ing] any fusion of an independent candidate and [the Republican] party." As we agree with the Commonwealth Court that appellants' claims do not establish a violation of appellants' First or Fourteenth Amendment rights, we affirm.[5]

## II

In *National Wood Preservers, Inc. v. Commonwealth, Department of Environmental Resources,* 489 Pa. 221, 414 A.2d 37 (1980), this Court stated:

> "It is fundamental to our jurisprudence that enactments of the Legislature are clothed with a presumption of constitutional validity, and that appellants, by claiming that an act is unconstitutional, carry a heavy burden of proof. See, e.g., *United States v. Vuitch,* 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1971); *In re William L.,* 477 Pa. 322, 329, 383 A.2d 1228, 1231 (1978); *Tosto v. Pennsylvania Nursing Home Loan Agency,* [460 Pa. 1, 16, 331 A.2d 198, 205 (1975)], quoting *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963) ('Courts may not declare a statute unconstitutional "unless it *clearly, palpably* and *plainly* violates the Constitution." ')."

Id., 489 Pa. at 234, 414 A.2d at 44. See also Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3). With regard to the constitutionality of state election laws, the Supreme Court of the United States has observed:

> "[T]he States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections, the time, place, and manner of holding primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates.

---

**5.** The Attorney General has filed a brief in support of the constitutionality of Section 979. The Secretary of the Commonwealth is not a party to the proceedings and has taken no position with respect to the merits.

It is very unlikely that all or even a large portion of the state election laws would fail to pass muster under our cases .... Decision in this context, as in others, is very much a 'matter of degree,' *Dunn v. Blumstein,* [405 U.S. 330, 348, 92 S.Ct. 995, 1006, 31 L.Ed.2d 274 (1972)], very much a matter of 'consider[ing] the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.' *Williams v. Rhodes,* [393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)]; *Dunn v. Blumstein,* supra, 405 U.S. at 335, 92 S.Ct. at 999." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). We turn to an examination of appellants' arguments with these considerations in mind.

## A.

In support of their equal protection challenge, appellants rely upon the truism that "[s]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike ...." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). In their view, although Section 979's prohibition against a party's substitute nomination of a candidate who has already been nominated for the same office by a political party promotes the legitimate state interest of preventing "party raiding," the prohibition against a party's substitute nomination of a candidate who has already been nominated by a political body fails to further this or any other legitimate objective.[6]

**6.** Appellants argue:

"[T]he evil legitimately sought to be controlled by this statute and similar statutes elsewhere is to prevent hidden control of a political party by barring nomination of a 'closet' member of the majority in the minority party's primary.... In the absence of such provisions, once its candidate is nominated by the minority party, the majority party could then nominate the candidate as a substitute nominee, thereby precluding all opposition in the general election.... By also barring a party from nominating as a substitute nominee any person who has already been nominated by a political body, the Legislature has restricted a political entity which cannot create the evil sought to be controlled. Nominees of political

Appellants' concentration on the evils of "party raiding" ignores the fact that Section 979 is part of a broad electoral plan set forth in Article IX of the Election Code ("Nomination of Candidates") which is designed to assure that, with certain limited exceptions, no candidate's name shall appear on a general election ballot more than once.[7] The prohibition of Section 979 applies with equal force to substitute nominations by political bodies. Section 980, 25 P.S. § 2940. Under Section 976 of the Code, similar restrictions apply in the regular nomination process:

"No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—. . . (d) in the case of nomination petitions, if nomination petitions have been filed for printing the name of the same person for the same office, except the office of judge of a court of record, or the office of school director in districts where that office is elective or the office of justice of the peace upon the official ballot of more than one political party; or (e) in the case of nomination papers, if the candidate named therein has filed a nomination petition for any public office for the ensuing primary, or has been nominated for any such office by nomination papers previously filed . . . ."

25 P.S. § 2936. Thus, no candidate may appear on the official primary ballot of more than one party, nor may a candidate be nominated by more than one political body. In addition, no candidate may seek the nominations of both a political party and a political body. See also Section 910, 25 P.S. § 2870 (affidavits accompanying nomination petitions)

bodies are, by their nature, not planted in a party's primary to thwart development of political opposition."
Brief of Appellants at 31–32.

**7.** Aside from the three offices for which cross-filing of nominations is permitted (judge of a court of record, elected school director and justice of the peace), cross-filing is permitted in the general election only when, in addition to obtaining the nomination of a political party or political body through the filing of nomination petitions or nomination papers, a candidate receives a write-in nomination in another party's primary. See *Magazzu Election Case,* 355 Pa. 196, 49 A.2d 411 (1946).

and Section 951, 25 P.S. § 2911(e) (affidavits accompanying nomination papers).

The Supreme Court of the United States has repeatedly recognized that the State has a legitimate interest in regulating the ballot to "avoid voter confusion." *Bullock v. Carter,* 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972).[8] This is precisely the object of Article IX of the Code, including Section 979. In addressing Section 976, the companion of Section 979, this Court has stated:

> "The real purpose of this part of the so-called 'party raiding' provisions is to prevent the election ballot from being cluttered by candidates who are seeking to multiply the number of times their name appears on the ballot under various inviting labels. See *Thompson v. Morrison,* 352 Pa. 616, 625, 44 A.2d 55, 59 (1945) (dissenting opinion by former Chief Justice JONES). The legislative remedy was to limit each person to being a candidate of one political group, a choice which could be made any time before the close of the nomination period."

*Packrall v. Quail,* 411 Pa. 555, 557, 192 A.2d 704, 706 (1963) (footnote omitted). Thus, whatever the effect of Section 979 on preventing "party raiding," that section, like Section 976, serves the important state interest of limiting each candidate to one listing on the ballot to assure that no candidate has an advantage over another "simply because his name appears several times on the same ballot." Brief of the Attorney General of Pennsylvania at 9.[9]

**8.** *Accord, Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *Williams v. Rhodes,* 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968); *Anderson v. Morris,* 636 F.2d 55 (4th Cir.), aff'g, 500 F.Supp. 1095 (D.Md.1980).

**9.** Appellants misperceive the extent of the State's interest in the integrity and fairness of the electoral process when they argue that the State's interest in preventing ballot cluttering must be limited to the regulation of "the number of candidates" on the ballot. In a related context this Court has stated:

34

If the result urged by appellants were to prevail, the statutory scheme of equal treatment of all political groups would be disturbed, and a real problem of equal protection would be created: while candidates of political bodies such as appellant Street would be eligible to receive more than one place on the ballot, candidates of political parties such as appellee Gray would not. In addition, under appellants' result, cross-filing of nominations would be permitted only between political parties and political bodies, not between political parties or between political bodies.

The constitutional infirmity of appellants' argument is demonstrated by *United Ossining Party v. Hayduck,* 357 F.Supp. 962 (S.D.N.Y.1971) and *Devane v. Touhey,* 33 N.Y.2d 48, 349 N.Y.S.2d 361, 304 N.E.2d 229 (1973), upon which appellants ironically rely. In both cases, the statutes at issue permitted candidates to appear on the ballot as nominees of more than one political party but prohibited candidates from appearing on the ballot as nominees of both a political party and an independent group. Because the statutes impermissibly discriminated against independent groups, they were held to violate the Equal Protection Clause. Under Pennsylvania's Election Code, on the other hand, political parties and political bodies are treated equally: neither may nominate, either initially or through substitution, a candidate for the general election who has already been nominated by another political group.

Nor does *In re Nomination Papers of Smith,* 494 Pa. 140, 430 A.2d 1156 (1981), support the claim that appellant Street is constitutionally entitled to have his name appear twice on the general election ballot. In *Smith,* this Court sustained,

"By placing a reasonable limitation upon access to a position on the ballot, the Legislature attempted to provide the voter with an understandable ballot and to assure that the qualifications and public support of a candidate, and not the position of his name on the ballot, would be the most important factor in the success or failure of a candidate."

*In re Nomination of La Verdi,* 462 Pa. 370, 376, 341 A.2d 125, 128 (1975). See also *Shankey v. Staisey,* 436 Pa. 65, 71, 257 A.2d 897, 899–900 (1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 684, 24 L.Ed.2d 682 (1970).

on statutory grounds, the claim of a candidate who sought reversal of an order of the Commonwealth Court striking his nomination papers as the candidate of a political body in a special election to fill a vacancy in the office of Representative in Congress. The candidate was also the unchallenged nominee of the Republican Party, having been named by the Republican Party caucus. In addition, he had unsuccessfully sought the nomination of the Democratic Party from that party's caucus.

In reversing the Commonwealth Court, this Court was governed by Section 631 of Article VI, "Special Elections," 25 P.S. § 2781. Section 631 specifically provides that no certificate of nomination or nomination paper filed for the nomination of candidates for a special election shall be refused "except for any of the reasons provided for in section 976 of this act." Because Section 976, 25 P.S. § 2936, does not contain any provision which disqualified the candidate's nomination papers,[10] Article VI of the Election Code required that the appellant's nomination papers be accepted and filed.

Because special elections differ in significant respects from general elections, including the existence of less advance notice of the election date and the absence of a primary in which to select the party's nominee, the Legislature's decision to apply a less restrictive prohibition against cross-filing in special elections than in general elections is a constitutionally permissible judgment. As decisions of the United States Supreme Court make clear, the Equal Protection Clause permits a legislature

> "to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' *Williamson v. Lee Optical of Oklahoma,*

---

**10.** Section 976 provides in pertinent part:
"No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—. . . (e) in the case of nomination papers, if the candidate named therein has filed a nomination petition for any public office for the ensuing primary, or has been nominated for any such office by nomination papers previously filed . . . ."

*Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked. See *Ozan Lumber Co. v. Union County National Bank,* 207 U.S. 251, 28 S.Ct. 89, 52 L.Ed. 195 (1907)."

*McDonald v. Bd. of Election Comm'rs of Chicago,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1409, 22 L.Ed.2d 739 (1969). *Smith,* therefore, in no respect supports appellants' contention that the Election Code is constitutionally invalid.

### B.

Appellants' First Amendment challenge is premised upon the untenable theory that Section 979, which restricts a party's substitute nominations in the same way that regular nominations are restricted, impermissibly interferes with a political party's associational right to govern itself. This theory overlooks the fact that, in filling vacancies on the party ticket, the political party is performing a function with respect to a public office which has been delegated to it by the State.[11] In addressing "the critical role played by political parties in the process of selecting and electing candidates for state and national office," the United States Supreme Court has stated:

"The State's interest in ensuring that this process is conducted in a fair and orderly fashion is unquestionably legitimate; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.' *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714."

11. Section 979 provides in pertinent part:
"Any vacancy happening or existing after the date of the primary in any party nomination . . . may be filled by a substituted nomination made by such committee as is authorized by the rules of the party to make nominations in the event of vacancies on the party ticket . . . ." 25 P.S. § 2939.

*Marchioro v. Chaney,* 442 U.S. 191, 196, 99 S.Ct. 2243, 2247, 60 L.Ed.2d 816 (1979).

Unlike the Wisconsin statute declared unconstitutional in *Democratic Party of United States v. LaFollette,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981), as an impermissible attempt to determine the qualifications and eligibility of delegates to the Democratic National Convention, Section 979 in no respect attempts to define the associational rights of any political party. While the right to associate for the advancement of political beliefs includes the right to advance a candidate who represents those interests, the "ballot access" cases of the United States Supreme Court make it clear that the right of association does not encompass the right to nominate as a candidate a particular individual who fails to meet reasonable eligibility requirements. See supra note 8. See generally "Developments in the Law—Elections," 88 Harv.L.Rev. 1117 (1975). Where, as here, the challenged requirement simply prohibits the nomination of a candidate who is already on the ballot, it cannot reasonably be said that this requirement "unfairly or unnecessarily burden[s] either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity," *Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974). See *Clements v. Fashing,* —— U.S. ——, ——, 102 S.Ct. 2836, 2848, 73 L.Ed.2d 508 (1982).

Appellants' theory that application of Section 979 will have the "impermissible effect of fostering the domination" of the Democratic Party in the Second Congressional District clearly misapprehends the purpose and limits of the First Amendment. As the Commonwealth Court stated,

"[n]owhere is there a constitutional mandate that election laws must guarantee an even contest. Our political process, historically, has been to assure only that the major political parties and the smaller ones have the same opportunity to convince electors that they should register with a particular party and that those who have no political affiliation can nevertheless field a candidate if certain minimum conditions are met."

67 Pa.Cmwlth. 441, 447–448, 447 A.2d 1052, 1055–56 (1962). Nor is there any basis for appellants' assertion that appellant Street's ineligibility as a candidate of the Republican Party impairs the Republican Party's First Amendment right to support appellant Street's candidacy. Again in the words of the Commonwealth Court,

"[n]othing in Section 979 would prohibit the Republicans from joining with the 'Milton Street Party' in promoting the candidacy of Senator Street. Nothing in Section 979 would prevent a prospective candidate from seeking to form a coalition of a political party with a political body to enhance his or her candidacy. Senator Street's name will be on the ballot for Democrats, Republicans and all other qualified electors to vote in November. Neither he nor the Republican Party have been prevented in an unconstitutional manner from exercising their political or association privileges."

67 Pa.Cmwlth. at 446, 447 A.2d at 1055. See *Krull v. Philadelphia,* 382 Pa. 1, 114 A.2d 119 (1955), aff'g on opinion at 2 D. & C.2d 181 (Phila.) (Section 979 and related provisions of the Election Code do not unconstitutionally prevent fusion of political parties or "deprive voters of the right to nominate a candidate upon any ticket which may attract votes"); *Wilson v. Philadelphia,* 319 Pa. 47, 179 A. 553 (1935) (provision permitting candidate's name to be printed on official primary ballot of only one party constitutional); *Williams v. Tucker,* 382 F.Supp. 381, 387–88 (M.D.Pa.1974) (election code provisions which "prevent a candidate from having his name appear more than once on the general election ballot and permit a candidate to be the nominee of only one political group" not unconstitutional). Compare *Minnesota Fifth Congressional District v. State ex rel. Spannaus,* 295 N.W.2d 650 (Minn.1980) (prohibition against political party's active support of independent candidates violates First Amendment).

Thus, it is clear that appellant Street's independent candidacy affords ample opportunity for the Republican Party's exercise of its First Amendment rights.

## III

Having considered the facts and circumstances underlying Section 979 and related provisions of the Election Code, the interest of the State in fair and orderly elections, and the interests which appellants claim to have been impaired by the law, we are convinced that Section 979 is a legitimate exercise of legislative authority and an essential element of the Legislature's plan for assuring the efficiency and integrity of the electoral process, a plan whose constitutionality has been consistently sustained by this Court since the enactment of the Election Code in 1937. Because appellants have failed to carry their burden of establishing any constitutional infirmity of Section 979, the order of the Commonwealth Court is affirmed.

Order of the Commonwealth Court affirmed.

HUTCHINSON, J., concurs in the result.

NIX and McDERMOTT, JJ., dissent.

LARSEN, J., dissents on the basis of denial of equal protection and on the basis of *In re Nomination Papers of Smith,* 494 Pa. 140, 430 A.2d 1156 (1981).