Honorable Lawrence G. **WILLIAMS** and Charles Sexton, Individually and on behalf of a class of registered voters, Plaintiffs,

v.

C. Dolores **TUCKER**, Secretary of the Commonwealth of Pennsylvania, Defendant.

Civ. No. 74–665.

United States District Court, M. D. Pennsylvania.

Sept. 13, 1974.

As Amended Sept. 23, 1974.

---

Francis X. Nolan, Donsky, Katz, Levin & Dashevsky, P. C., Philadelphia, Pa., for plaintiffs.

Israel Packel, Atty. Gen., Commonwealth of Pennsylvania, Melvin R. Shuster, David L. Kurtz, Deputy Attys. Gen., Harrisburg, Pa., for defendant.

Henry B. FitzPatrick, Jr., Liebert, Short, FitzPatrick & Lavin, Philadelphia, Pa., Edward Friedman, Harrisburg, Pa., for intervenor, Stephen J. McEwen.

Before ROSENN, Circuit Judge, and SHERIDAN and NEALON, District Judges.

## MEMORANDUM

PER CURIAM:

Plaintiffs, Lawrence G. Williams, the incumbent United States Congressman for the Seventh Congressional District of Pennsylvania, and Charles Sexton, a registered voter in the Seventh Congressional District, the latter on behalf of all voters in said district who support the independent candidacy of Congressman Williams, filed this action seeking declaratory and injunctive relief against the defendant, C. Dolores Tucker, Secretary of the Commonwealth of Pennsyl-

vania. The defendant is the chief election officer of Pennsylvania and is charged by law with the duty of receiving and accepting nomination papers for federal and state offices, 25 P.S. § 2621.

This action is properly brought under the Civil Rights Act, 42 U.S.C.A. § 1983, and the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, and federal jurisdiction is predicated on 28 U.S.C.A. § 1343. Specifically, plaintiffs request the court to declare unconstitutional a section of the Pennsylvania Election Code, 25 P.S. § 2911(e)(5), enjoin its enforcement by the Commonwealth, and order the defendant to accept and file plaintiff Williams' nomination papers and place his name on the 1974 general election ballot as an independent candidate for United States Congress. Since plaintiffs seek injunctive relief restraining state officials from the enforcement, operation and execution of a state statute on the ground of its unconstitutionality, a three-judge court has been convened pursuant to 28 U.S.C.A. § 2281. In accordance with Rule 65(a)(2) of the Federal Rules of Civil Procedure, the case was set down for non-jury trial on the merits thereby consolidating the trial on the merits with the hearing on the preliminary injunction.

The Pennsylvania Election Code, 25 P.S. § 2600 et seq., establishes two methods of nomination for political office: (1) by selection at a primary election and (2) by nomination papers. The former method is limited to candidates seeking nomination by a political party; the latter method must be utilized by those seeking the nomination of a political body. A political party is an organization which has polled a significantly large number of votes at the preceding general election to entitle it to nominate all its candidates for office at primaries.[1] An organization which has not polled the requisite number of votes at the preceding general election is designated a political body and cannot nominate candidates at primaries; it must nominate candidates by nomination papers.[2]

In order to qualify for the primary ballot, the candidate of a political party must file a nomination petition signed by a requisite number of registered members of his party.[3] All nomination petitions must be filed on or before the tenth Tuesday prior to the primary election.[4] The primary preceding each general election is held the third Tuesday of May, except in the year of the nomination of a President of the United States when it is held on the fourth Tuesday of April.[5] If the candidate wins the primary election, he runs as his party's nominee for the particular office at the ensuing general election.

Political bodies cannot use the primary election machinery for nomination of their candidates. A political body nominee is nominated directly by the body, through filing nomination papers containing a requisite number of signatures.[6] The requisite number of signatures must be obtained in a three-week period beginning the tenth Wednesday before the primary.[7] A person is qualified to sign a nomination paper if he is a registered voter of the electoral district wherein the candidate is running for office.[8] A person can sign a nomination paper and vote in the primary, but each voter can sign only one nomination paper for each office to be filled.[9] All nomination papers must be filed on or before the seventh Wednesday prior to the primary election.[10]

---

1. 25 P.S. § 2831(a), (b).

2. 25 P.S. § 2831(c).

3. 25 P.S. § 2872.

4. 25 P.S. § 2873(d).

5. 25 P.S. § 2753.

6. 25 P.S. § 2911(b).

7. 25 P.S. § 2913(b).

8. 25 P.S. § 2911(c).

9. 25 P.S. § 2911(c).

10. 25 P.S. § 2913(c).

This case was submitted to the court on a stipulation of facts.[11] The following are the undisputed facts. Plaintiff Williams, the incumbent Congressman for the Seventh District, was defeated in the Republican primary in May 1974. Thereafter, plaintiff Sexton formed an unincorporated association or political body designated as "independents" which circulated nominating papers and obtained 2,614 acceptable signatures. This was more than the statutorily required two per centum of the largest entire vote cast for any officer, except a judge of a court of record, elected at the last preceding election in the Seventh District, 25 P.S. § 2911(b), which in this case equals 2,452 required signatures. On August 12, 1974, the nomination papers, containing the requisite number of signatures, were submitted for filing by Congressman Williams. The papers were rejected by agents of the defendant at the State Bureau of Elections on the ground that Williams had been an unsuccessful candidate for the Republican party nomination in the spring primary and that therefore he could not append to the proffered nomination papers an affidavit that complied with 25 P.S. § 2911(e)(5). Section 2911(e)(5) provides: "There shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein, stating— . . . (5) that his name has not been presented as a candidate by nomination petitions for the same office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for the same office." The language of this section is analogous to that of 25 P.S. § 2936 which in part provides: "No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if— . . . (e) in the case of nomination papers, if the candidate named therein has filed a nomination petition for any public office for the ensuing primary, or has been nominated for any such office by nomination papers previously filed; . . . ."

In resolving the issues before the court, we must examine the basic structure of the pertinent provisions of the Pennsylvania Election Code. Our examination reveals that there are two additional sections of the Election Code, 25 P.S. § 2911(b) and 25 P.S. § 2913(b) and (c), which are inherently involved in the legal issues raised by the facts of this case. Section 2911(b) fixes the signature requirement on nomination papers of candidates of political bodies at two per centum of the largest entire vote cast for any candidate, except a judge of a court of record, elected at the last general election. Section 2913(b) requires that these signatures be obtained in a three-week period beginning the tenth Wednesday before the primary. Section 2913(c) states that all nomination papers must be filed on or before the seventh Wednesday prior to the primary. Thus, Sections 2913(b) and (c), if constitutional, bar the acceptance of the nomination papers submitted for filing in the instant case.

■ Plaintiffs rely on the continued vitality of People's Party v. Tucker, M.D.Pa.1972, 347 F.Supp. 1, and Consumer Party v. Tucker, E.D.Pa., 364 F.Supp. 594 (decided September 28, 1973), for their contention that Pennsylvania law entitles Williams to file nomination papers as an independent candidate after the Republican primary. In *People's Party* a three-judge district court concluded that the three-week period established in Section 2913(b) for obtaining the 35,624 signatures needed by a presidential candidate to satisfy the two per centum requirement of Section 2911(b) is so short and remote from the election as to be unreasonable. The court held that Section 2913(b) fails to serve any valid state purpose, effectively blocks access to the ballot by all but the most dis-

---

11. Using the paragraphs of the complaint as a basis, the parties at the hearing orally stipulated to the relevant facts. The parties waived the filing of an answer. There is no material issue of fact.

ciplined political organizations, and hence violates the right to appear on the ballot, the right to cast an effective vote, and the right to associate for the advancement of political beliefs protected by the first amendment. Having declared Section 2913(b) unconstitutional, the court enjoined its enforcement as to federal and state-wide offices to be filled in the November 1972 election and extended the filing time for nomination papers to August 14, 1972.

In *Consumer Party* plaintiff Weiner on August 9, 1973, had submitted to the City Commissioners of the City and County of Philadelphia nomination papers of the Consumer Party bearing the requisite number of signatures purporting to nominate Weiner as a candidate for the office of City Controller in the November 1973 election. The City Commissioners, who constitute the Board of Elections of the City and County of Philadelphia and are charged by law with the duty of accepting nomination papers for other offices to be filled by voters of the County of Philadelphia, refused to file the nomination papers on the ground that the requirements of 25 P.S. § 2913(b) and (c)—that the required signatures be gathered in a three-week period beginning 265 days before the general election and the nomination papers be filed on or before the seventh Wednesday before the primary election—had not been met. The Consumer Party had been one of the party plaintiffs in *People's Party,* supra. Relying on *People's Party* and the doctrine of *res judicata,* the single district judge in *Consumer Party* ordered plaintiff's name on the November 1973 ballot and enjoined the Commonwealth from "printing or directing the printing of ballots or preparing and/or placing any names of candidates in and upon any voting machine for use in the election of November 6, 1973, and in all subsequent November elections, unless there be included on such ballots and upon such voting machines the names, of those candidates of political bodies which have submitted nomination papers on or be-

fore the fourteenth day of August in each year, and which nomination papers are otherwise in conformance with the requirements of the Election Code, including the required affidavits and filing fees."

The recent case of Storer v. Brown, 1974, 415 U.S. 724, 94 S.Ct. 1274, 39 L. Ed.2d 714, effectively undermines the holdings of *People's Party,* supra, and *Consumer Party,* supra. In *Storer* the Supreme Court in ruling on the constitutionality of the California Election Code stated that a requirement that an independent presidential candidate obtain 325,000 signatures in 24 days in order to qualify for the general election ballot did not impose an unconstitutional burden, provided there is an adequate number of eligible voters from which to obtain the signatures. The California statute required an independent candidate to file nomination papers signed by no less than 5% nor more than 6% of the entire vote cast in the preceding general election in the area for which the candidate sought to run. All of these signatures had to be obtained during a 24-day period and none of the signatures could be gathered from persons who voted at the primary election. The Court in examining these provisions stated:

" . . . Standing alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden. Signatures at the rate of 13,820 per day would be required, but 1,000 canvassers could perform the task if each gathered 14 signers a day. On its face, the statute would not appear to require an impractical undertaking for one who desires to be a candidate for President. But it is a substantial requirement; and if the additional likelihood is, as it seems to us to be, that the total signatures required will amount to a substantially higher percentage of the available pool than the 5% stipulated in the statute, the constitutional claim asserted by Hall is not frivolous. Before the claim is finally dismissed, it should be

determined whether the available pool is so diminished in size by the disqualification of those who voted in the primary that the 325,000-signature requirement, to be satisfied in 24 days, is too great a burden on the independent candidate for the office of President."

In light of *Storer*, it is apparent that this court must reject the reasoning of the majority in *People's Party*.[12] If it is constitutional to require a presidential candidate to obtain 325,000 signatures in 24 days, *a fortiori* it is constitutional to require a presidential candidate to obtain 35,000 signatures in 21 days. Moreover, the available pool of voters eligible to sign nomination papers is substantially larger under the Pennsylvania Election Code than under the California Election Code construed in *Storer*: Pennsylvania, unlike California, allows those who vote in the primary to sign nomination papers, although each voter can sign only one nomination paper for each office, 25 P.S. § 2911(c). Furthermore, while the Pennsylvania statute prescribes that an independent presidential candidate, in order to qualify for the general election contest, must obtain a quantity of signatures equal to *2%* of the highest vote cast for a *statewide candidate* at the previous election, the California statute required *5% of the total number of votes cast* at the last general election. Viewing the totality of the requirements with respect to independent candidates, it is readily apparent that the California Election Code is much more burdensome than the Pennsylvania Election Code. Thus, in light of *Storer*, we are unable to adhere to the holdings in *People's Party* and *Consumer Party*.

In the instant case the number of signatures required pursuant to 25 P.S. § 2911(b) for an independent congressional candidate to qualify for the general election ballot in the Seventh District is 2,452. There are over 250,000 registered voters in the Seventh Congressional District.[13] In light of *Storer*, it is constitutionally permissible to require an independent candidate to gather 2,452 signatures in 21 days from an available pool of over 250,000 qualified voters, thereby requiring the gathering of 120 signatures per day. The total signatures required amount to slightly less than 1% of the available pool of voters from which the needed signatures can be obtained. This is a substantially lower percentage of the available pool than the 5% upheld by the Supreme Court in Jenness v. Fortson, 1971, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 and Storer v. Brown, supra. For the foregoing reasons, we hold that 25 P.S. § 2913(b), which requires that signatures on nomination papers be obtained during a three-week period between the tenth and seventh Wednesdays prior to the primary, is constitutional. Plaintiff Williams, not having complied with Section 2913(b), is not entitled to have his name placed on the general election ballot.

Sections 2913(b) and (c) and Section 2911(e)(5) taken together require a candidate to choose between the primary route and the nomination paper route to the general election ballot. These sections prevent a candidate who has filed nomination papers from running in the primary and prevent a candidate who has lost in the primary from filing nomination papers.

Plaintiffs argue that it is unconstitutional to forbid candidates who have lost in the primary from running in the general election as independents. In Storer v. Brown, supra, the Supreme Court upheld the constitutionality of the provisions of the California Election Code which expressly forbade a ballot position to an independent candidate at the general election if he had been defeated in a

---

12. Judge Nealon dissented on the basis that Pennsylvania had an important state interest in adopting its election code and he saw no abridgement of plaintiffs' first and fourteenth amendment rights.

13. Total voter registration in the Seventh Congressional District was 212,249 in 1970 and 260,011 in 1972.

party primary or if he had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary electon. The Court reasoned as follows:

" . . . A candidate in one party primary may not now run in that of another; if he loses in the primary, he may not run as an independent; and he must not have been associated with another political party for a year prior to the primary. See §§ 6401, 6611. The direct party primary in California is not merely an exercise or warm-up for the general election but an integral part of the entire election process, the initial stage in a two-stage process by which the people choose their public officers. It functions to winnow out and finally reject all but the chosen candidates. The State's general policy is to have contending forces within the party employ the primary campaign and primary election to finally settle their differences. The general election ballot is reserved for major struggles; it is not a forum for continuing intra-party feuds. The provision against defeated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified. Hopefully, the people are presented with understandable choices and the winner in the general election with sufficient support to govern effectively.

"Section 6830(d) carries very similar credentials. It protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternate course to the ballot. It works against independent candidacies prompted by short-range political goals, pique or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party.

"A State need not take the course California has, but California apparently believes with the founding fathers that splintered parties and unrestrained factionalism may do significant damage to the fabric of government. See The Federalist, No. 10 (Madison). It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status. Nor do we have reason for concluding that the device California chose, § 6830(d), was not an essential part of its overall mechanism to achieve its acceptable goals. As we indicated in *Rosario* [410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1], the Constitution does not require the State to choose ineffectual means to achieve its aims. To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot." (Footnotes omitted.)

Thus, Sections 2911(e)(5) and 2913(b) and (c), which have the combined effect of preventing a candidate defeated in the primary from obtaining a position on the general election ballot as the candidate of a political body, do not for this reason violate the first amendment or the equal protection clause of the fourteenth amendment. Storer v. Brown, supra; Jenness v. Fortson, 1971, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554. Nor do these sections violate the Constitution because they in effect prevent a candidate from having his name appear more than once on the general election ballot

and permit a candidate to be the nominee of only one political group. In Bullock v. Carter, 1972, 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92, a unanimous Supreme Court stated:

"The Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot. Jenness v. Fortson, 403 U.S. at 442 [91 S.Ct. 1970, 29 L.Ed.2d 554]; Williams v. Rhodes, 393 U.S. [23], at 32 [89 S.Ct. 5, 21 L.Ed.2d 24]. In so doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections. Although we have no way of gauging the number of candidates who might enter primaries in Texas if access to the ballot were unimpeded by the large filing fees in question here, we are bound to respect the legitimate objectives of the State in avoiding overcrowded ballots. . . ." (Footnote omitted.)

■ There remains plaintiffs' contention that Section 2911(e)(5) adds qualifications for the office of United States Congress contrary to Art. I, § 2, cl. 2 of the Constitution. This argument is totally without merit. Art. I, § 4, cl. 1 of the Constitution authorizes the states to prescribe "the Times, Places and Manner of holding Elections for Senators and Representatives." In addition, Art. I, § 2, cl. 1 gives the states the initial task of determining the qualifications of voters who will elect members of Congress. As the foregoing discussion makes clear, the Pennsylvania Election Code, including Section 2911(e)(5), merely regulates the manner of holding elections and does not add qualifications for office. *See* Storer v. Brown, supra. Section 2911(e)(5) simply prevents a candidate from contemporaneously filing nomination papers and running in the primary.

Plaintiffs', request for declaratory and injunctive relief will be denied. The foregoing shall constitute the court's findings of fact and conclusions of law.