In Re: Nomination Papers of Joseph F. Smith as the Candidate of a Political Body for the Office of Representative in the United States House of Representatives.

David B. Glancey, Petitioner.

Heard June 11, 1981, by President Judge CRUM-
LISH.

*Joseph H. Huston, Jr., Morgan, Lewis & Bockius,*
with him *Alan C. Kessler,* for petitioner.

*Benjamin Paul,* for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, June 19,
1981:

David B. Glancey, Democratic Party candidate for
United States Representative from Pennsylvania's
Third Congressional District in Philadelphia, contests
the nomination papers of Joseph F. Smith, candidate
of the political body denominated "Smith for Con-
gress."

We have carefully reviewed the pleadings, consid-
ered the factual assertions and analyzed the appropri-
ate law as it applies to the issues presented herein and

hold that the nomination papers of Smith, the political body designate, must be set aside.

This political controversy erupted when on May 15, 1981, the Governor issued a writ declaring that a special election would be held on July 21, 1981 to fill the vacancy in the Third Congressional District seat in the United States House of Representatives.

Following is a recitation of the complex political maneuver which resulted in Smith's being hung on his own petard as a political body candidate: On May 18, 1981, Smith, a registered and enrolled elector of the Democratic Party began compiling signatures in support of his candidacy on petitions under the political body designation "Smith for Congress." On May 28, 1981, in compliance with the rules of the Democratic party, Smith also presented himself to the ward leaders of his party soliciting the party's formal nomination certification. At that time he was a registered and enrolled member of the Democratic Party from at least 1952, a Democratic Senator representing the Fourth District since 1970, and a member of the party's 31st Ward Executive Committee. The Democratic City Committee however rejected Smith and endorsed Glancey as its properly designated standard bearer. On May 29, 1981 the Democratic State Committee approved the City Committee's recommendation. At approximately twelve o'clock noon that day Smith officially changed his party enrollment to "NP" or non-partisan. On May 29, 1981, after the Republican Party endorsed Smith as its candidate, Smith announced that he would not only accept that nomination but Smith would also seek to be identified on the ballot as the "Smith for Congress" political body candidate.

On June 1, 1981, two sets of documents were accepted and filed by the Bureau of Elections certifying Smith's name in nomination. The first, filed at 11:35 a.m., were nomination papers for the political body

"Smith for Congress." The second, filed at either 11:37 a.m. or 11:41 a.m., were the Republican Party's nomination certificate.

Although the Bureau determined that a political body's nomination papers must only contain 1,359 valid signatures to qualify it for designation on the special election ballot, Smith submitted approximately 4,318 signatures obtained by him or his agents between May 18, 1981 and May 31, 1981. Of this number 782 elector signatures were affixed after May 29, 1981, the date Smith changed his party enrollment. In addition, all of the nomination paper circulators as well as all four individuals named in the "Smith for Congress" Committee are registered in the County Commissioner's Office as Democrats, while twenty-five of the circulators are actually Democratic Committeemen or women.

Attached to these nomination papers were affidavits executed by Smith on May 30, 1981 expressly stating that his name "has not been presented as a candidate to be voted for at the ensuing Special Election, by any other nomination papers or certificates filed for such office." Additional affidavits were executed on May 30th and 31st by Smith expressly stating that as a political body candidate he is not a registered and enrolled member of a political party and that his name "has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing Primary Election, nor . . . by any other nomination papers for any such office. . . . "

On June 1, 1981, Smith joined the leaders of the Republican Party in a news conference during which he stated that if his candidacy as an "independent Democrat with Republican support" was successful in the election, he would immediately reinstate his Democratic registration status, "take a seat on the Democratic side of the aisle" in the House of Representatives, and join the Democratic Congressional caucus.

## Issue

The fundamental question for our determination is whether a life-long, active party member, who has been rejected for nomination by party caucus, can change his party enrollment to nonpartisan and thereafter be eligible to run in a Special Election as the candidate of a political body. Since the answer lies interwoven between our Election Code's provisions governing political party and political body candidates and disaffiliated political status, as well as primary, general, and special election provisions, carefully researched background material must be delineated.

## Election Background

### A. Political Party vis-a-vis Political Body Disaffiliation

The Pennsylvania Election Code,[1] provides that a political party must poll a significant number of votes at the preceding general election in order to avail itself and its candidates of the primary election process. 25 P.S. §2831. To qualify for the position on the primary ballot, the political party candidate must file a nomination petition signed by the requisite number of registered members of his party. 25 P.S. §2872. If that candidate wins the primary election, he becomes the party's nominee for that office at the ensuing general election. Political bodies, on the other hand, cannot use the primary election process to nominate candidates. A political body has a candidate nominated when the body files nomination papers containing the required electors' signatures circulated during a specified time period prior to the primary election. 25 P.S. §§2911(b), 2913(b).

A political body candidate may not be affiliated with a political party and retain his "independent"

---

[1] Act of June 3, 1937, **P.L.** 1333, *as amended*, **25 P.S.** §2600.

eligibility. Prior to January 1, 1980, however, the Election Code did not require formal disaffiliation as a prerequisite to the filing by a political body. *See In Re Nomination Papers of John W. Morris,* (No. 1997 C.D. 1980, filed August 29, 1980), where this Court, faced with the political body candidacy of a registered Democrat for this same Third District seat, was obliged to approve the candidate's filing in the absence of a workable disaffiliation test. This is no longer the case. Section 951.1 of the Code, 25 P.S. §2911.1, mandates that a political body candidate may not be "a registered and enrolled member of a party ... beginning thirty (30) days before the primary and extending through the general or municipal election". Section 951(e), 25 P.S. §2911(e), requires that these facts must be averred in an affidavit, together with a declaration that there are in circulation no simultaneous nomination petitions for the ensuing primary election or other nomination papers for any such office.

B. *Primary and General Elections vis-a-vis Special Election Disaffiliation*

However, when a vacancy in the House of Representatives occurs outside of the normal political sequence, a special election must be called by the Governor to fill that vacancy. 25 P.S. §2777. In the case of such a sudden necessity for election, the primary-general election process is rendered inoperative. The special election provisions of the Code then call for nominations by either party certificate or body papers no later than fifty days prior to the special election. 25 P.S. §2779. Party nominations are made by certificate in a form prescribed by Section 630, 25 P.S. §2780, and need not include the party candidate affidavit required by Section 910, 25 P.S. §2870. Political body nomination by papers are made in accordance with

Sections 951, 952 and 954, 25 P.S. §§2911, 2912 and 2914 and their specific requirements for qualified circulators and candidates, and the necessary itemized affidavits.

Although the process is altered because of the unique circumstances, the Code's provisions specifically call for disaffiliation as a prerequisite to the valid candidacy of a political body in a special election. Section 951.1, 25 P.S. §2911.1, declares that a registered and enrolled member of a party cannot be eligible to be the candidate of a political body for a special election, while Section 951(e), 25 P.S. §2911(e), requires an affidavit upon filing that he is neither an enrolled party member nor has been nominated by other papers for the office.

## Discussion

Objecting to the political body's nomination papers based upon Smith's "independent" political status, Glancey argues first that party disaffiliation must be declared when the special election writ issued on May 15, 1981 and not when the nomination papers were filed on June 1, 1981. We disagree.

To hold that registered and enrolled party members are ineligible to run as nonpartisan political body candidates once the special election is called would require a political foresight or "the mysticism of a psychic" not contemplated much less mandated by the Code. We recognize in the alternative, however, that to accept disaffiliation when nomination papers are filed would allow a party member to chart the winds of political fortune in a party nominating process up to the last unsuccessful moment, change party enrollment, and file nomination papers for the vacant seat as the candidate of a political body, relying upon signatures procured while he was still a bona fide party member. A careful reading of Section 951.1, 25 P.S.

§2911.1, in conjunction with other provisions of the Code leads us to a reasonable solution. To attain or retain eligibility, a political body candidate may not be a political party candidate for *either* nomination or election.

Considering limitations on the eligibility of candidates, Section 951.1 provides:

> Any person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year shall be ineligible to be the candidate of a political body in a general or municipal election held in that same year *nor shall any person who is a registered and enrolled member of a party be eligible to be the candidate of a political body for a special election.* (Emphasis added.)

25 P.S. §2911.1.

Definitions are crucial to an understanding of this provision. Section 102(a) of the Pennsylvania Election Code provides that "[t]he word 'candidate' shall, unless the context otherwise requires, include both candidates for *nomination* and *election.*" (Emphasis added.) 25 P.S. §2602(a). Black's Law Dictionary defines a "candidate" as "[o]ne who seeks or offers himself, or is put forward by others, for an office, privilege or honor. . . . it is not necessary that he should have been nominated. . . . A nominee. . . ." (4th ed. p. 260) Further, Section 102(k) and (f) provide that "[t]he word 'nomination' shall mean the selection . . . of a candidate for a public office authorized to be voted for at an election" and that " 'election' shall mean any general, municipal, special or primary election, unless otherwise specified." 25 P.S. §2602(k) and (f). Section 951.1 specifically provides that "[no] person who is a registered and enrolled member of a

party be eligible to be the *candidate* of a political body for a special election.'' (Emphasis added.)

Clearly, Smith became the candidate for the political body "Smith for Congress" *nomination* on May 18, 1981 when the first signature was affixed to his nomination papers. At that time, and until May 29, 1981, Smith was a registered and enrolled member of the party and an active candidate for the Democratic nomination as well. Only after his change of party enrollment on May 29th did Smith become eligible to be the candidate of any political body in the July 21, 1981 special election.

Given Smith's valid political body candidacy on May 29, 1981, Glancey argues alternatively that *only* those signatures collected after May 29, 1981, the date party enrollment was changed to non-partisan, may be validly counted. Where only 782 signatures were thereafter compiled, the nominating papers lacked the 1,359 signatures necessary for a valid body candidate. With this contention, we must agree.

Since Smith was ineligible to be the "Smith for Congress" candidate until he changed enrollment, those signatures obtained on or before May 29th were not only premature, but are null and void. To allow a member of a political party to hold signatures in escrow in anticipation of being the candidate of a political body in a special election should his political party supplication prove unsuccessful, would contravene the spirit and intent of the Election Code and provide approbation to an "increasing tide of political gamesmanship.'' *See Haqq v. Department of State* (2008 C.D. 1980, Filed September 26, 1980), *aff'd per cur,* 491 Pa. 299, 420 A.2d 1327 (1980).

Finally, Glancey challenges Smith's eligibility as a political body candidate because of the simultaneity of the Republican Party's certificate filing and the nomination papers affidavit that Smith would not be an-

other party or body candidate as of the date of filing. Considering that the papers and the party certificate were filed on June 1, 1981 only minutes apart, Smith's May 29, 1981 body candidacy and Republican party nomination, and the clear intent of the special election affidavits, we must agree with Glancey's objections. We do recognize that additional affidavits were executed on May 30th and 31st purporting to specifically apply to independent, special election candidacies, but they are patently inaccurate by referring to "ensuing Primary Election." However, in fairness and deference to those electors who signed the nomination papers, we will read all of the affidavits in para materia.

Putting aside the clear statutory solution, this Court cannot approve political conduct which consciously misuses the legislative intent of our election laws. There is no more compelling interest in our political system than the preservation of an election process which seeks to prevent defeated or disaffected candidates from utilizing the independent nomination to destroy the historical American tradition of the political party and its representation of the will of its people. Our citizens' rights to honestly and conscientiously utilize the political machinery to assert their prevailing view points must be cherished and protected. Our Courts have therefore clearly prohibited unsuccessful contenders for party nominations in the primary from obtaining a position on the general election ballot as the candidate of a political body.[2] *See Baronett v. Tucker,* 26 Pa. Commonwealth Ct. 559, 365

---

[2] Although based upon consitutional challenges to California and Pennsylvania's statutory provisions relating to the time period during which independent candidates can collect nominating signatures, the federal courts reached the same conclusion. *See Storer v. Brown,* 415 U.S. 724 (1974), *Salera v. Tucker,* 399 F. Supp. 1258 (E.D. Pa. 1975), and *Williams v. Tucker,* 382 F. Supp. 381 (M.D. Pa. 1974).

A.2d 179 (1976). A candidate need only avoid the primary election process to retain eligibility as a political body candidate. *See Packrall v. Quail,* 411 Pa. 555, 192 A.2d 704 (1963) (candidate withdrew his nominating petition before the primary), and *Oberdorf v. Rumberger,* 70 Pa. D. & C.2d 192 (1975) (candidate's nominating petition was judicially set aside *before* the primary). Only *In Re: Nomination Paper of Lucasi,* 46 Pa. Commonwealth Ct. 389, 407 A.2d 81 (1979) and *Bucks County Democratic Party v. Tracy,* 27 Bucks Co. L. Rep. 222 (1975) where the candidates simply filed nomination papers late, have we found dissident party members not participating in the primary being denied access to the ballot as body candidates.

The single underlying concern of the Election Code is thus to require the candidate to make a political choice between the party primary route and the political body nomination route to the general election ballot. *Baronett, supra.* Simply removing the primary election and implanting a special election scenario cannot affect the intent of the Code. The only distinction is the result of necessity for candidate selection by which party caucuses are substituted for the primary election. We believe that this simple change in format should not provide "independent" candidates, prompted by short range political goals, pique or personal quarrel, with a disruptive forum for continuing inter-party feuds.[3] We so hold.

In this case, the Democratic Party's May 29, 1981 decision to nominate Glancey as its candidate in the special election was tantamount to nomination in a party primary. Smith unsuccessfully sought the party's support. Only after this rejection did he change his party enrollment and seek a detour route to politi-

---

[3] *Storer v. Brown,* 415 U.S. at 735 (1974), *cited in Williams v. Tucker,* 382 F. Supp. at 387 (M.D. Pa. 1974).

cal body nomination in the special election. Political charades, whether borne of unrequited or pure love, vengeance or destructiveness, cannot be allowed to thwart the concerned and considered intention of the legislature. It is this Court's duty to fundamentally preserve the established election machinery and prevent substantial damage to the "fabric of government" by fostering "splintered parties and unrestrained factionalism."[4]

Turning to Smith's Republican nomination,[5] we have posed to counsel the grave doubts as to its legitimacy in these circumstances. Although the Code would not seem to require the normal party candidate affidavit in a special election, 25 P.S. §2780, we cannot close our eyes to the obvious. A candidate who enrolls as "non-partisan" by definition disaffiliates himself from political party policy and philosophy and chooses to leave the philosophical positions of either party. There is clearly a distinction between one who chooses to disagree with some of the tenets of his party but in general subscribes to its particular philosophy, and one who chooses to forsake those principles and adopt the tenets of another political party. Our case law instructs us that disaffected, disappointed party members may not seek either political body or another political party nomination after they have entered the party nomination process, *Packrall v. Quail, supra. Baronett v. Tucker, supra,* or ignore our legislature which by obvious implication mandates us that a candidate generally may not have his name appear

---

[4] 415 U.S. at 736.

[5] Republican City Committee was granted leave to file a memorandum of law in support of its position that a person registered nonpartisan could appear on the special election ballot as a Republican candidate. Citing Sections 629, 802 and 907, 25 P.S. §§2779, 2832 and 2867, Republican City Committee argues that the Code does not expressly prevent either the candidate or the party's actions.

more than once on the general election ballot or be nominated by more than one political group. 25 P.S. §§2911(e)(5), 2913(b) and (c).[6] Since Glancey has for some reason known to him decided not to pursue this issue by refusing an objection to its consideration now or within the statutorily specified period, we will leave that for consideration and resolution for another forum.

## CONCLUSION

.This Court places neither a heavy nor unreasonable burden on a political body candidate for special election. We expect the letter and spirit of our election laws to be honored—that a candidate not participate in the party nomination process, that disaffiliation be documented, and that the requisite signatures be obtained and affidavits executed after disaffiliation.

Date: June 19, 1981

## ORDER

The Petition of David B. Glancey to set aside the nomination papers of Joseph F. Smith as the candidate of a political body for the office of United States Representative, from the Third Congressional District of Pennsylvania in the special election to be held July 21, 1981, is granted. The Secretary is directed not to print his name as a candidate for such office on the ensuing special election ballot.

The cost of the notes of stenographic testimony are to be borne equally by the parties.

Dated: June 19, 1981

---

[6] In fact, the United States Supreme Court in *Bullock v. Carter*, 405 U.S. 134, 145 (1972), expressly recognized the States' legitimate interest in regulating the number of candidates on the ballot "to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority . . . of those voting, without the expense and burden of runoff elections.