In Re: Nomination Certificate of T. Milton Street as Republican Candidate for the Office of Representative in Congress from the Second Congressional District.

Objection of William H. Gray, III

Heard July 1, 1982, by Judge MACPHAIL.

*Gregory M. Harvey, Morgan, Lewis & Bockius,* for petitioner.

*Louis W. Fryman, Fox, Rothschild, O'Brien & Frankel,* for respondents, T. Milton Street, and William Dunham and Samuel Rymer, individually and on behalf of the caucus of the City Committeemen of the Republican Party in the Second Congressional District of the Commonwealth of Pennsylvania.

*Debra K. Wallet,* Deputy Attorney General, with her *Allen C. Warshaw,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for Commonwealth of Pennsylvania.

MEMORANDUM OPINION AND ORDER BY JUDGE MAC-PHAIL, July 15, 1982:

On June 10, 1982 the caucus of City Committeemen of the Republican Party in the Second Congressional District (Respondents) filed a subsituted nomination certificate with the Secretary of the Commonwealth which purported to nominate State Senator T. Milton Street as the Republican candidate for Representative in Congress.[1] A petition[2] to set aside that certificate has been filed with this Court averring, *inter alia,* that on May 25, 1982 a nomination paper was filed with the Secretary of the Commonwealth by the "Milton Street

---

[1] The candidate nominated by the Republican Party in the primary election has withdrawn.

[2] The petition was filed by William H. Gray, III, the duly nominated candidate of the Democratic Party for Representative in Congress representing the Second Congressional District (Petitioner).

Party" nominating Senator Street as an independent candidate for Representative in Congress from the same Congressional District. The petition avers that that substituted nomination certificate should not have been accepted by the Secretary of the Commonwealth in light of Section 979 of the Pennsylvania Election Code (Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2939 which reads in pertinent part as follows:

Any vacancy happening or existing after the date of the primary in any party nomination, by reason of the death or withdrawal of any candidate after nomination, or by reason of the death before or on the day of the primary election of a candidate for nomination who had received a plurality of votes of his party electors cast for the office for which he sought nomination, may be filled by a substituted nomination made by such committee as is authorized by the rules of the party to make nominations in the event of vacancies on the party ticket: *Providing, however, That no substitute nomination certificate shall nominate any person who has already been nominated by any political party or by any other political body for the same office.* (Emphasis added.)

In their answer to the petition before us, Respondents admit the critical factual averments but contend that the language of Section 979 emphasized in the excerpt above, is unconstitutional as applied to the circumstances of this case; more specifically, Respondents urge that that language in Section 979 violates the Fourteenth Amendment to the U.S. Constitution, U.S. Const. amend. XIV[3] in that it "discriminates in

---

[3] In their brief, Respondents also contend that the disputed language of Section 979 impinges upon their rights under the First Amendment to the U.S. Constitution, U.S. Const. amend. I.

favor of major political parties and violates Respondents' rights to engage in political association.''

In testimony offered at the hearing before this Court, it appears that the Republican Party is very much the minority party as far as registration is concerned in the Second Congressional District and that it has had that status for some considerable period of time. The registration majority of the Democratic Party exceeds 200,000. The history of past elections in the Congressional District, at least over the past three decades, indicates that a Republican has virtually no chance of being elected in the district as presently constituted.

It has been conceded by the Respondents at oral argument that if we find that Section 979 survives Respondents' constitutional challenges, the substitute nomination paper must be set aside since no other objection or answer to the petition to set aside has been made. Briefs have been received and oral argument heard from the parties before us. The Attorney General's Office has been duly notified of the constitutional challenge and has filed a brief in support of the constitutionality of the statute here at issue.

Respondents have the heavy burden, of course, of rebutting the strong presumption of the constitutionality of Section 979. *Picariello v. Commonwealth,* 54 Pa. Commonwealth Ct. 252, 421 A.2d 477 (1980). Both Petitioner and Respondents agree that Section 979 is part of Pennsylvania's "anti-party-raiding" provisions in the Code. *Krull v. City and County of Philadelphia,* 2 D. & C.2d 181, *aff'd,* 382 Pa. 1, 114 A.2d 119 (1955). The purpose of anti-party raiding provisions is "to prevent the election ballot from being cluttered by candidates who are seeking to multiply the number of times their name appears on the ballot under various inviting labels." *Packrall v. Quail,* 411 Pa. 555, 557, 192 A.2d 704, 706 (1963).

Petitioner contends that the effect of Section 979 is to prevent cross-filing by preventing a candidate's name from appearing more than once on the ballot. He cites case law to support his argument that this prohibition of cross-filing is constitutional. *Storer v. Brown,* 415 U.S. 724 (1974) and *Williams v. Tucker,* 382 F. Supp. 381 (M.D. Pa. 1974). Respondents counter by indicating that if a nominee was defeated in one party's primary, the other may, nevertheless, nominate the defeated candidate. *Martonick v. Beattie,* 383 Pa. 168, 117 A.2d 715 (1955). Moreover, if a candidate is successful in obtaining his own party's nomination and subsequently withdraws, he may still be nominated by the other party. *Healey's Substituted Nomination,* 43 Lack. Jur. 153 (1941). Neither of these situations, of course, is comparable to the circumstances before us now. Here we are concerned with a nominee whose name *is* on the ballot by virtue of the efforts of a political body and who now wants to appear on the ballot *again* as the nominee of a political party.

Respondents also point to *In Re Nomination Papers of Smith,* 494 Pa. 140, 430 A.2d 1156 (1981) which reversed without opinion the holding of this Court in the same case, reported at 60 Pa. Commonwealth Ct. 150, 431 A.2d 1096 (1981), in support of their contention that it is possible in a Pennsylvania election to have a nominee's name on two lines on the ballot. Respondents acknowledge, as they must, that *Smith* was a "special election" case where no primary election was involved and therefore resort to Section 979 would have been improper. The case before us, of course, is not a special election case and does present circumstances where a primary election has already occurred. Thus, *Smith* is not controlling here.[4]

---

[4] It is also noted that the issue of whether a candidate's name may appear twice on the ballot was not raised in *Smith.*

Respondents contend that Section 979 is over-broad and unnecessary to protect party stability because of the recent "disaffiliation" amendment which appears at Section 951.1 of the Code, added by Section 3 of the Act of July 12, 1980, P.L. 649, 25 P.S. §2911.1, and prevents a person who was an unsuccessful candidate for one party in the primary from becoming the candidate of a political body merely by filing a nomination paper.[5] Petitioner points out, however, it is not so much the stability of a political party that is at issue here, as is the integrity of the primary election process in Pennsylvania. We can see no discernible constitutional imposition by virtue of any "over-broad" provisions of Section 979 in the instant case.

Respondents next argue that Section 979 as applied here has the effect of harming minority parties because its alleged effect is 1) to make a coalition between the Republicans and a political body impossible and 2) to discourage candidates from seeking nominations because such a coalition is impossible. The merit of this argument escapes us. Nothing in Section 979 would prohibit the Republicans from joining with the "Milton Street Party" in promoting the candidacy of Senator Street. Nothing in Section 979 would prevent a prospective candidate from seeking to form a coalition of a political party with a political body to enhance his or her candidacy. Senator Street's name will be on the ballot for Democrats, Republicans and all other qualified electors to vote in November. Neither he nor the Republican Party have been prevented in an unconstitutional manner from exercising their political or association privileges.

Respondents urge upon us the proposition that Section 979 unconstitutionally burdens minority par-

---

[5] Senator Street did change his registration to Independent prior to the primary election in the instant case.

ties, political bodies and their candidates. They say that the mere showing of a legitimate state interest is insufficient to validate the provisions of Section 979; rather, Respondents argue that the appropriate standard of review is "strict scrutiny" because of the alleged unconstitutional impingement on the fundamental right to vote. In support of that proposition, Respondents cite us to the plurality opinion of Justice REHNQUIST in *Clements v. Fashing*, 50 U.S.L.W. 4869 (U.S. June 25, 1982), which held that in ballot access cases involving classification schemes that imposed burdens on new or small political parties or independent candidates, strict scrutiny of such schemes requires that they be declared unconstitutional notwithstanding any alleged or real state interest to be promoted thereby. We do not quarrel with that result nor do we believe that the decision controls the case before us. The Republican Party hardly could be classified as a new or minority party, although it is the minority party in registration in this Congressional District. Respondents are hard put indeed to show that *anyone* is denied ballot access by the provisions of Section 979. As we have already said, all that has been denied Mr. Street is *double* access to the ballot. Nothing in the Constitution of the United States nor in the Constitution of Pennsylvania guarantees such double access; nor can it be said that there is any constitutional deprivation of voters' rights by denying them two different opportunities to see the candidate's name on the ballot, even if such a result might have the effect of bringing into better balance in this particular Congressional District the overriding registration majority of the Democratic Party. Nowhere is there a constitutional mandate that election laws must guarantee an even contest. Our political process, historically, has been to assure only that the major political parties and the smaller ones have the same opportu-

nity to convince electors that they should register with a particular party and that those who have no political affiliation can nevertheless field a candidate if certain minimum conditions are met.

In making an equal protection challenge, one must demonstrate in the first instance a discrimination of *some substance. American Party of Texas v. White,* 415 U.S. 767, 781 (1974). Respondents' argument in the instant case is based upon illusory constitutional grounds, not substantive ones.

The major part of Respondents' argument is based upon some federal district cases. Respondents contend that in *United Ossining Party v. Hayduk,* 357 F. Supp. 962 (S.D. N.Y. 1971), an election statute in New York similar to the one in Pennsylvania was struck down because the court found that having a candidate's name appearing on two lines rather than one was so advantageous that statutory language which would prohibit it restricts both voters and candidates. Respondents note also that in *People's Party v. Tucker,* 347 F. Supp. 1 (M.D. Pa. 1972), the United States District Court for the Middle District of Pennsylvania cited *Ossining* with approval and struck down a provision of the Code which allowed but three weeks for a political party to obtain nominating signatures on the ground that such a requirement was unreasonable and violative of the First and Fourteenth Amendments.

As noted by Petitioner, there are substantial differences between the New York statute and our Code; specifically, the New York statute (a) permits cross-filing by candidates *in the primaries* by as many parties as the candidates desire to enlist and (b) permits defeated candidates to organize political bodies *after the primaries.* Such provisions, of course, do not prevail in Pennsylvania. We note further that *People's*

*Party v. Tucker,* was, in a later case in the Middle District of Pennsylvania, *Williams v. Tucker,* expressly held to be effectively undermined by *Storer v. Brown.* In the latter case, the United States Supreme Court upheld a California statute which required independent candidates to disaffiliate themselves from a political party one year prior to the primary election. The statutory provision was challenged on First and Fourteenth Amendment grounds. The court recognized that the direct primary in California was an integral part of the entire election process by which all but the chosen candidates are winnowed out. The Court held that the statute furthered the state's interest in the stability of its political system which was not only a permissible but a *compelling* interest, outweighing the interest of the candidate or his supporters.

In *Williams v. Tucker,* an excellent summary of the Pennsylvania election process is set forth. In that case, Section 951(e)(5) of the Code, 25 P.S. §2911(e)(5) was challenged on consitutional grounds. There are some similarities between the disputed language in Section 979 and that which appears in Section 951. That section requires that in each nominating paper filed by a political body, an affidavit must be appended which states, *inter alia,* that the candidate's name listed thereon has not been presented as a candidate by nominating *petitions* for any public office at the ensuing primary and has not been nominated by any other nomination *papers* filed for any such office. The Court held that neither Section 951(e)(5) nor Sections 953(b) and (c), 25 P.S. 2913(b) and (c) violate the constitution "because they in effect prevent a candidate from having his name appear more than once on the general election ballot and permit a candidate to be the nominee of only one political group". *Id.* at 387-388. In support of its conclusion, the court

cited *Bullock v. Carter,* 405 U.S. 134 (1972) where the United States Supreme Court held that a state has a legitimate interest in regulating the number of candidates on the ballot, and could do so within constitutional bounds by requiring a substantial filing fee. Surely that same state interest must prevail in the case now before us to assure the integrity of the Pennsylvania primary election process. It would follow as a matter of logic that if *People's Party v. Tucker* is no longer the law, the reasoning in *Ossining* relied upon by the Court in *People's Party* must also be subject to challenge.

The final case called to our attention by Respondents is *Devane v. Touhey,* 33 N.Y. 2d 48, 349 N.Y.S. 2d 361, 304 N.E. 2d 229 (1973) where a New York Court held that the section of the New York election law which provided that a person nominated by a political party could not accept another nomination from an independent group, was unconstitutional because it discriminated between a candidate who was nominated by more than one political party and one who was nominated by a political party or a political organization and then, by virtue of the challenged statute, could not get his name on the ballot more than one time. The distinction between that case and the one before us now is obvious. Nothing in Section 979 discriminates between political parties and political bodies. A nominee from *either* one can have his or her name on the general election ballot—but it may appear there just one time, regardless of whether the person was nominated by a political party or a political body.

In summary, our close examination of the briefs of counsel and our considerfation of the evidence presented to us leads us to the conclusion that Respondents have fallen far short of meeting their heavy burden to overcome the presumption of the constitutional validity of Section 979.

### ORDER

It is ordered that the petition of William H. Gray, III to set aside the substituted nomination certificate filed by the duly constituted caucus of the Republican City Committeemen of the Second Congressional District be and the same is granted. The Secretary of the Commonwealth is directed *not* to certify the name of T. Milton Street as a candidate of the Republican Party for the office of Representative of Congress for the Second Congressional District.