**Jack TRINSEY**

v.

**Brenda K. MITCHELL, et al.**

**Civ. A. No. 94–0976.**

United States District Court, E.D. Pennsylvania.

March 17, 1994.
Order Denying Reconsideration March 28, 1994.

Jack Trinsey, pro se.

Thomas B. Kenworthy, Philadelphia, PA, for The Republican Party Pennsylvania.

## MEMORANDUM

CAHN, Chief Judge.

This case involves the constitutionality of Pennsylvania's ballot access laws for senatorial and gubernatorial candidates of major political parties, as well as peripheral challenges to other aspects of the election scheme. Plaintiff Jack Trinsey ("Trinsey"), appearing *pro se*,[1] challenges the constitutionality of certain signature requirements of the Pennsylvania Election Code ("Election Code"). Additionally, Trinsey asks this court for an order rescheduling Pennsylvania's primary election for a later date, and for a monetary judgment against the Republican State Committee of Pennsylvania ("RSC").

---

1. Given the *pro se* posture of this case, this court has construed plaintiff's allegations liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Becker v. CIR*, 751 F.2d 146, 149 (3d Cir.1984).

Jurisdiction in this matter exists pursuant to 28 U.S.C. § 1331.

Before the court is a Rule 12(b)(6) motion to dismiss plaintiff's complaint. For the reasons discussed below, the court will grant defendants' motion to dismiss.

## I. Legal Standard

■■■ The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *Sturm v. Clark*, 835 F.2d 1009, 1111 (3d Cir.1987). A complaint may not be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Perry v. Grant*, 775 F.Supp. 821, 824 (M.D.Pa.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In deciding a motion to dismiss pursuant to 12(b)(6), the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Dismissal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984).

## II. Background

On February 14, 1994, Trinsey, a self-described "rank and file member of the Republican Party" (Compl. at 3, ¶ 7a), who is "relentlessly litigating for more fair and equitable voter rights not only in this Honorable Court but in every State in the Union"

**2.** Trinsey had alleged that preliminary injunctive relief was appropriate in this case, however, this court denied his request in an opinion issued February 28, 1994. Trinsey then requested reconsideration of the denial of injunctive relief; this court denied his request by Order dated March 10, 1994.

**3.** The signature requirements for the United States Senate differ slightly from the requirements for Governor. Section 2872.1 of the Election Code provides in relevant part:

Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below:

(Compl. at 3, ¶ 7b), filed a three-count complaint seeking the following relief:

(1) a declaratory judgment that sections of the Election Code, which require that persons seeking the nomination of a major political party file a nomination petition bearing a requisite number of signatures in an allotted time frame, pose an unconstitutional burden on candidates. *See* 25 P.S. §§ 2868, 2872.1 and 2873.

(2) an order rescheduling the primary election.

(3) a monetary judgment against the Republican State Committee of Pennsylvania "in an amount equal to [Trinsey's] fair share of 1994 Republican Primary Campaign Funds." (Compl. at 8, ¶ 15).

Each argument will be dealt with *seriatim*.[2]

## III. Discussion

### A. Constitutionality of Election Code Provisions

Trinsey challenges the constitutionality of that portion of the Election Code which requires a prospective senatorial or gubernatorial candidate to obtain two thousand signatures of registered and enrolled members of the proper party within a total of 22 days.[3] Trinsey claims that the requirement that he gather 2,000 signatures within the short time period allotted violates his constitutional rights.[4]

■■■ Trinsey's argument is meritless. It is beyond dispute that states may impose reasonable restrictions to limit access to the ballot. *Perry*, 775 F.Supp. at 825. The Supreme Court has consistently held that states have an "undoubted right to require candidates to make a preliminary showing of sub-

(2) United States Senate: Two thousand.
(3) Governor: Two thousand including at least one hundred from each of at least ten counties.
25 P.S. § 2872.1 (Supp.1993).

The time period for circulating nomination petitions is set forth in 25 P.S. § 2868, which provides in relevant part: "No nomination petition shall be circulated prior to the thirteenth Tuesday before the primary, and no signature shall be counted unless it bears a date affixed not earlier than the thirteenth Tuesday nor later than the tenth Tuesday prior to the primary."

**4.** The Complaint reads in relevant part:

[P]ennsylvania's Election Scheme fail(s) to meet Constitutional muster for rank and file

stantial support in order to qualify for a place on the ballot...." *Munro v. Socialist Workers Party,* 479 U.S. 189, 194, 107 S.Ct. 533, 537, 93 L.Ed.2d 499 (1986) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788–789 n. 9, 103 S.Ct. 1564, 1569–1570 n. 9, 75 L.Ed.2d 547 (1983)). *See also American Party of Texas v. White,* 415 U.S. 767, 783, 94 S.Ct. 1296, 1307, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). As the Court said in *Anderson, supra:*

> We have recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes.... [T]he State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.

*Anderson,* 460 U.S. at 788, 103 S.Ct. at 1569–1570 (citation omitted).

■■■ The signature requirements challenged by Trinsey in this case do not pose an unreasonable burden on candidates of major political parties.[5] As Judge Shapiro said in *Consumer Party, supra,* in passing reference to the statute at issue here: "With regard to the major parties, the [signature] requirement [of § 2872.1] imposes a *de minimus*

burden." *Consumer Party,* 633 F.Supp. at 888. In fact, signature requirements more burdensome than those at issue here have withstood constitutional scrutiny. *See, e.g., Storer,* 415 U.S. at 740, 94 S.Ct. at 1284 (noting that gathering 325,000 signatures in 24 days not *per se* unconstitutional); *Valenti v. Mitchell,* 962 F.2d 288, 299–300 (3d Cir. 1992) (noting that eight to nine day period to collect 1,000 signatures not *per se* unconstitutional); *Perry,* ·775 F.Supp. at 826–27 (upholding as constitutional requirement to collect 41,305 signatures within 149 days); *Black v. Cook County Officers Electoral Bd.,* 750 F.Supp. 901, 908 (N.D.Ill.1990) (granting defendants' motion to dismiss and holding that requirement to gather 25,000 signatures not unconstitutional); *Williams v. Tucker,* 382 F.Supp. 381, 386 (M.D.Pa.1974) (holding requirement to gather 2,452 signatures within 21 days constitutional). In light of the above precedent, this court finds Trinsey's suggestion that collecting 2,000 signatures within 22 days violates the Constitution is quite simply without merit.[6]

**B.  *Changing the Primary Date***

■■■ Trinsey sets forth no basis for why this court should change the date of Pennsylvania's primary election. Rather, Trinsey simply states: "The 1994 Spring Primary must be moved to September 13, 1994." (Compl. at 8, ¶ 13) This suggestion is patently frivolous. Article I, Section 4 of the

---

members of the Republican Party, who, as prospective candidates for the Office of Governor and/or United States Senator, ·as Trinsey is, find that the terms of compliance of subject election scheme are impossible to achieve because of the time restraints....
Complaint at 3.
The requirement to obtain 100 signatures in 10 counties for Gubernatorial prospective candidates is an impossible requirement and must be struck down....
Complaint at 5.

**5.** In judging a ballot access law, the Supreme Court has made clear that such laws cannot be subjected to "any litmus-paper test that will separate valid from invalid restrictions." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). Rather, the Court articulated in *Anderson, supra,* an approach for courts to follow:

[A court] must first consider the character and magnitude of the asserted injury to the rights

protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forth by the state as justifications for the burden imposed by the rule.
*Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570.
However, in evaluating a state's interest, it is clear that the State "need not make a particularized showing of the existence of voter confusion, ballot overcrowding or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro,* 479 U.S. at 194–95, 107 S.Ct. at 537. For purposes of this case, the court takes judicial notice that Pennsylvania's ballot restrictions were passed in the interest of avoiding ballot clutter and confusion. *Consumer Party v. Davis,* 633 F.Supp. 877, 884 (E.D.Pa.1986) (citing Legislative Journal—House (Sept. 26, 1984 at pp. 2015–17)).

**6.** In his complaint, Trinsey also suggested that the requirement that he obtain one hundred signatures from each of ten counties in order to run for Governor constituted an unconstitutional

United States Constitution provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof. ..." Pennsylvania has designated by statute that "[t]here shall be a General primary preceding each general election which shall be held on the third Tuesday of May in all even-numbered years. ..." 25 P.S. § 2753. As the Court of Appeals for the Third Circuit has noted, "[t]he state's interest in a timely and orderly election is strong" as is "[t]he strong state interest in holding its primary as scheduled. ..." *Valenti*, 962 F.2d at 301. This court finds no basis whatsoever to reschedule Pennsylvania's primary.

C. *Right to Funds from Republican State Committee*

■ Trinsey's final allegation fares no better than his others. Trinsey suggests that as a "rank and file" member of the Republican Party who is attempting to be elected, he is entitled to "an equal right, fair share of the GOP funds available for the 1994 Republican primary." (Compl. at 8, ¶ 15)

There is no constitutional basis or other theory to support this argument. The RSC has a First Amendment right to support whichever candidate it chooses in the primary. *See generally Eu v. San Francisco Democratic Comm.*, 489 U.S. 214, 224, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989) (holding that political organizations have the right to support candidate of their choice).

IV. *Conclusion*

The court recognizes Trinsey's continuing efforts in the election and voter rights arena. However, as the Supreme Court has continually recognized, states have an interest in "preserving the integrity of the electoral process and in regulating the number of candidates on the ballot. ..." *Munro*, 479 U.S. at 194, 107 S.Ct. at 537. Based on the foregoing analysis, Trinsey's complaint will be dismissed. An appropriate order follows.

***ORDER***

AND NOW, this 17th day of March, 1994, upon consideration of defendants' motion to dismiss, and plaintiff's response thereto, it is hereby ORDERED that the defendants' mo-

---

burden. (Compl. at 5, ¶ 7i) In the opinion denying preliminary injunctive relief, this court pointed out that an argument could be made that the county-distribution requirement is unconstitutional due to the dilutive impact such a scheme has on the signatures of voters who reside in more heavily populated counties. *See* Memorandum at 4, n. 4 (Feb. 28, 1994). It should be noted that the court brought the argument to Trinsey's attention due to the *pro se* posture of the case and the court's familiarity with this issue. *See generally Elliot v. Shapp*, Civil Action No. 76–1277 (E.D.Pa. Mar. 9, 1979) (Cahn. J.) (holding 25 P.S. § 2872(a) of the election code unconstitutional as applied because of the county signature requirement at issue).

Defendants correctly point out, however, that in contrast to the case of *Elliot v. Shapp*, where the candidate had satisfied the overall signature requirements but not the county distributive requirement, Trinsey has not satisfied the overall signature requirement and thus would not be entitled to a place on the primary ballot as a Republican candidate for the Office of Governor even if the county distribution requirement did not pass constitutional muster. In Trinsey's case, his nomination petition was not rejected because of a failure to comply with the county signature requirement but rather because he collected only a single signature when 2,000 signatures are required.

In order for a plaintiff to have standing as required under Article III, he must show that he "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir.1993) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)). Because Trinsey's nomination petition was rejected solely on the basis of his failure to comply with the 2,000 signature requirement, he is unable to demonstrate that he has suffered an injury "likely to be redressed by a favorable decision" with respect to the county distribution requirements. *See Davis v. Thornburgh*, 903 F.2d 212, 220 (3d Cir.), *cert. denied*, 498 U.S. 970, 111 S.Ct. 436, 112 L.Ed.2d 420 (1990). In short, Trinsey has "nothing to gain" by establishing that the county distribution requirement is constitutionally infirm. *Id.* Accordingly, Trinsey lacks standing to attack the county distribution requirement. *See generally LaRouche v. Monson*, 599 F.Supp. 621, 624 (D.Utah 1984) (holding that plaintiff did not have standing to challenge constitutionality of early filing deadline where reason for denial of nomination petition was failure to comply with requirement that signatures be verified rather than failure to comply with filing deadline). *But see Vote Choice, Inc. v. Di Stefano*, 814 F.Supp. 195, 204 (D.R.I.1993) (citing cases which suggest standing requirements are construed broadly in election context).

tion is GRANTED. The within case is hereby dismissed and the clerk of courts is ordered to close the case for statistical purposes.

### ORDER

AND NOW, this 28 day of March, 1994, upon consideration of plaintiff's motions, it is hereby ORDERED that the following motions are DENIED [1]:

  (1) Plaintiff's Motion for Reconsideration.

  (2) Plaintiff's Motion for Protective Order.

  (3) Plaintiff's Motion to Add Twenty–Seven Persons as Additional Defendants.

---

1. On March 17, 1994, after a careful examination of the merits, this court issued an opinion dismissing plaintiff's complaint. Plaintiff's latest motions are similarly without merit and are accordingly denied.

Additionally, it has come to the court's attention that this case was also litigated in the Commonwealth Court of Pennsylvania. That court, the Honorable David W. Craig presiding, held a hearing in the case and then issued an opinion on March 16, 1994, dismissing all of plaintiff's claims. That decision is currently on appeal. Because Trinsey is barred by the prior adjudication on the merits, this provides the court with an alternative basis for denying plaintiff's motions.