Thomas R. **FORTUNE** and Anthony J. Genovesi, Plaintiffs,

v.

**KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE, Executive Committee of the Kings County Democratic Committee, Herbert S. Lupka, as Chairperson of the Kings County Democratic County Committee, and Howard Golden, as Chairperson of the Executive Committee of the Kings County Democratic County Committee, Defendants.**

No. 84 Civ. 0718.

United States District Court, E.D. New York.

Nov. 30, 1984.

762

Genovesi & Kellman, Brooklyn, N.Y., for plaintiffs.

Fisher & Fisher, Brooklyn, N.Y., for defendants.

Before PRATT, Circuit Judge, WEINSTEIN and PLATT, District Judges.

## MEMORANDUM AND ORDER

### PER CURIAM:

This action has its genesis in the January 1984 election of the chairperson of the Executive Committee of the Kings County Democratic Committee. Plaintiffs, both nominated for the position, lost the election to Howard Golden, a defendant in this action. Plaintiffs' claim focuses upon certain amendments to the rules of the Kings County Democratic County Committee adopted on October 6, 1982.

For many years prior to 1982, the Executive Committee had been made up of state committeemen, who were elected by members of the Democratic party in Kings County, the chairperson, secretary, treasurer and assistant treasurer of the County Committee, who were appointed by the County Committee; and the chairpersons of all standing committees of the Executive Committee, who were appointed by the chairperson of the Executive Committee. Under the old rules certain key functions, including organization of the Executive Committee, election of officers of the Executive Committee, filling of vacancies in the Executive Committee, authorizing nonparty members to run as Democrats for public office, and filling vacancies in nominations for public office, were voted upon by only those members of the Executive Committee who were also members of the state committee. By the 1982 amendments, this restriction on voting was eliminated so that those matters could be voted upon by the entire Executive Committee, which included the state committeemen plus the 19 other members who were appointed either by the chairman of the Executive Committee or by the County Committee.

Plaintiffs claim that these amendments as to voting in the Executive Committee must be submitted to the Attorney General of the United States for preclearance pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, because they constitute a "standard, practice, or procedure with respect to voting" within the meaning of § 5. Defendants contend, on the other hand, that the rule changes do not come within the purview of § 5 because they merely affect the internal operating procedures of the Executive Committee and are not concerned with any public electoral functions of the party.

After the complaint was filed, this three-judge district court was convened pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973c. Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Because affidavits

have been submitted and considered by the court, we treat the motion as one for summary judgment. Fed.R.Civ.P. 56. After argument of the motion, the parties were given additional time in which to submit supplemental materials. Having reviewed all the submitted materials and concluding that there is no genuine issue as to any material fact, we deny defendants' motion and, despite the absence of a cross-motion for judgment, grant a summary declaratory judgment to plaintiffs. *See* 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720 at 29–33 and n. 20 (1983).

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, in relevant part, provides:

[W]henever a [S]tate or political subdivision [covered by Section 4] shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, * * * such State or subdivision may institute an action in United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, * * * and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, or procedure. *Provided,* that such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if [it] has been submitted * * * to the Attorney General and the Attorney General has not interposed an objection within sixty days * * *.

The impact of this statute was applied to some actions of a political party by 28 C.F.R. § 51.7:

Certain activities of political parties are subject to the preclearance requirement of Section 5. A change affecting voting effected by a political party is subject to

the preclearance requirement: (1) If the change relates to a public electoral function of the party and (2) if the party is acting under authority explicitly or implicitly granted by a covered jurisdiction or political subunit subject to the preclearance requirement of Section 5.

While the complaint seeks broad based relief, plaintiffs' claim was substantially limited at the hearing on the motion and in the posthearing submissions. No longer do plaintiffs seek to depose the chairman of the Executive Committee or undo any past actions taken by the Executive Committee. Instead, plaintiffs seek a declaratory judgment that the 1982 rule changes, which for certain issues expanded the Executive Committee's eligible voters from only the state committeemen to the entire membership, including those appointed by the committee chairman, violate the voting rights act because of their racially discriminatory effect. It is not disputed that a substantial number of the *elected* state committeemen were black, but that none of the *appointed* members of the Executive Committee were black. Consequently, plaintiffs argue, before the 1982 rule changes could be properly implemented, preclearance through the Attorney General's office was required.

We note in passing that the "trigger" for this action was the election of the chairman of the Executive Committee by a group that plaintiffs imply was, or could have been, "packed" by the chairman's own appointments. In fact, however, a majority of the elected state committeemen, as well as a majority of the appointed members, voted for the chairman.

Among the issues we must consider are (1) jurisdiction, (2) merits of plaintiffs' claim, and (3) the defenses of laches and mootness.

### 1. *Jurisdiction*

Although the parties have assumed jurisdiction, we have had some difficulty with it. The jurisdictional question is whether this court has subject matter jurisdiction over an action such as this. Plaintiff alleges jurisdiction under 42 U.S.C. §§ 1973c and

1973d. Section 1973 prohibits any procedure imposed by any state or political subdivision to deny or abridge any citizen's right to vote on account of race or color. Violators are subject to severe penalties. 42 U.S.C. § 1973j.

The risk of penalties is reduced through section 1973c, which requires approval of any changes in procedures either by preclearance through the Attorney General, or by a declaratory judgment action in the district court for the District of Columbia. The authorized declaratory judgment action can be brought by the "state or political subdivision," (in this case the Kings County Democratic party or its Executive Committee) whose rule or procedure is challenged. "Submissions" to the Attorney General can be made by "an appropriate official of the political party". 28 C.F.R. § 51.21(b). Although "appropriate official" is not formally defined, we interpret it to mean an authorized official of the party, because of the context of the preceding subsection, 28 C.F.R. § 51.21(a), which provides that submission shall be "by the chief legal officer or other appropriate official of the submitting authority or by any other *authorized* person on behalf of the submitting authority." Emphasis added.

Contrary to defendants' argument, there is no authority in the statute or the regulations for a disgruntled member of the committee to file either a declaratory judgment action in the D.C. district court or a preclearance request with the Attorney General. Moreover, neither the Attorney General's approval nor the declaratory judgment action "will bar a subsequent action to enjoin enforcement of such * * * procedure", § 1973c, and the statute gives no guidance as to who might bring such a "subsequent action".

■ Section 1973j(f) grants jurisdiction to all district courts "of proceedings instituted pursuant to this section", and it eliminates any requirement of exhausting administrative remedies. It is true that nowhere is any authority expressly given to people such as plaintiffs, who are mere members of the Executive Committee, for bringing a declaratory action such as this one to either establish the need for preclearance of the relevant changes, or to enjoin enforcement of such changes until preclearance is obtained. However, since § 5 of the voting rights act should be liberally construed, *see United Ossining Party v. Hayduk*, 357 F.Supp. 962, 966 (S.D.N.Y. 1971); *see also Allen v. State Board of Elections*, 393 U.S. 544, 566, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969), such a right should be implied under *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), particularly because the statute, as noted above expressly contemplates court involvement for purposes in addition to the District of Columbia preclearance action. Our conclusion, therefore, is that we do have subject matter jurisdiction over the present case as an implied right of action under § 1973c.

### 2. Merits of Plaintiffs' Claim.

Plaintiffs' case has been shifting its grounds. The *complaint* seemed to concentrate on the combined effect of the rules for appointing additional members to the Executive Committee and for electing the chairman of the Executive Committee. On the *oral argument* plaintiffs seemed to be attacking virtually every change in the rules which had occurred since November 1, 1968. In their *supplemental brief,* plaintiffs focus on the 1982 amendments which enlarged the voting powers of the appointed members. They attack the amendments as racially discriminatory and seek to bring them within the prohibitions of § 1973 as a "public electoral function", primarily because the Executive Committee, as thus enlarged, has powers to fill vacancies in nominations and to permit nonparty members to run under the party label.

■ Relying on *United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982), plaintiffs argue that election of the chairman, himself, is a public electoral function, because in practice the chairman of the Executive Committee has extensive powers which approach one man rule of the Kings County

argument. Rather, we conclude that the Executive Committee performs a public electoral function with respect to filling vacancies in nominations pursuant to New York Election Law § 6–148, and in authorizing nonparty members to run as Democrats pursuant to New York Election Law § 6–120. Because they affected the public electoral functions of the Executive Committee in these ways, the 1982 amendments, which enlarged the voting constituency of the Executive Committee, constitute changes covered by the Voting Rights Act and required preclearance. Plaintiffs, therefore are entitled to declaratory relief as set forth below.

### 3. *Laches and Mootness.*

Defendants have argued both laches and mootness. Since no prejudice to defendants has resulted from plaintiffs' delay in bringing this action, and since plaintiffs seek only the limited relief of a declaratory judgment, we decline to dismiss on grounds of laches.

Mootness has been suggested on two grounds: (1) plaintiffs can themselves seek preclearance and therefore have no need for a declaratory judgment; and (2) since the County Committee and the Executive Committee are replaced every two years at the primary election and then reorganized with new rules, the 1982 rules under which plaintiffs are proceeding became moot early in October of this year.

As to the first argument, it seems clear, despite plaintiffs' apparent concession at the time of oral argument, that the "submission" of a request for preclearance to the Attorney General under 28 CFR § 51.21 can be done only by the committee or its authorized representative, and not by a disgruntled member. "Communications" from anyone, including plaintiffs, might be received by the Attorney General in connection with a proceeding that is pending by reason of a "submission", 28 CFR § 51.27, but the regulations clearly distinguish such "communications" from a "submission" for preclearance.

As to the second mootness claim, since the new committee, elected in 1984, has adopted essentially the same rules as those adopted by the 1982 committee, mootness does not require dismissal merely because in theory the committee is different. The offending rule has now been continued, even though it is in violation of the Act because it has never received preclearance.

### CONCLUSIONS

We have jurisdiction. Neither laches nor mootness bar relief. Since the Executive Committee performs public electoral functions by filling vacancies in nominations and by approving candidacies of nonparty members, changes in its voting membership require preclearance.

Plaintiffs are therefore entitled to a declaratory judgment that the amendments to the Rules for the Government of the Kings County Democratic County Committee, initially adopted October 6, 1982, and thereafter continued, insofar as they deleted from certain sections the limitation of voting to state committeemen only, were changes requiring preclearance under the Voting Rights Act, and further declaring that the amendments can have no further effect until defendants comply with the preclearance requirements of the Act.

SO ORDERED.